May it please the court. Mr. Heller, I am Morgan Scroggins on behalf of the appellants Angela and Jack Howser. We appear before this tribunal after a jury verdict was returned in February of 2018. This was a 1983 action whereupon the verdict was returned against them for $970,000 alleging constitutional rights violations under section 1982. Counsel let me interrupt you for a moment. You're appealing the district judge's denial of your renewed judgment for a motion for judgment as a matter of law. You did not include the transcript of the judge's ruling on that in your appendix. Is there a reason why you did not? There is not. There was an oversight if we did not. The relevant ruling, I mean that is what's on appeal, and you did not include it. You included lots of other just kind of random pages from the transcript of the trial, but you did not include the relevant piece of information. Well then I would ask for leave to file that relevant piece. That's not necessary because now we've pulled it from the docket, but in the future you need to thank you and I apologize. Most particularly it is the thrust of our appeal in this action that we believe that there was no reasonable basis to believe a conspiracy existed between the Housers and the state actors Chris Quick and Russell Adams. Chris Quick was the state's attorney of Lawrence County, Russell Adams being the sheriff of said County. In order to prove a conspiracy a combination of two or more persons must act in concert to commit an unlawful act or to commit a lawful act by unlawful means. And again a review of the record shows that there was no when, where, why, or how between the parties as to how this conspiracy existed. It is clear from the record that a valid warrant for arrest of the plaintiff Jade Green existed at the time of her arrest on November 2nd of 2014. It is also abundantly clear that the state's capacity to advise both the sheriff and the chief of police, Chief White, during this period of time as to how the arrest was to occur and what the procedure would be with regards to the placement of the minor child. Now as the court is well aware a minor child was involved during this arrest, a four-year-old child that would have been left at the home without a parent to supervise. Not necessarily. Very often children go with the parent to the police station. And that was pointed out during the trial. With regards to that there was a statute that was consulted both by the state's attorney, the chief of police, the sheriff, and other police officers involved in this instance. And that is 735 ILCS 5 backslash 107-2. That statute provides when a person may be arrested or detained and it also provides a procedure when a minor child may be left at home. Well that seems to be the difficulty though. It only sets up a procedure that the police and places an obligation on police officers to follow that. That's correct. That's all it does. Well my problem with your case sir is that I don't see how that statute creates any cognizable liberty interest protected by the 14th Amendment. You've got to show that there's a liberty interest of your client at stake here. And we know already two circuits have held it with respect to these procedural statutes as to how police officers ought to work in an arrest situation. They don't really develop, they don't really create a cognizable liberty interest in the arrestee that's enforceable in federal court. And I'd like your views on that. It seems to me that that really, frankly it seems to me the district court should have dismissed this case. Okay well I then I agree with you obviously your honor. And based upon that the thrust of my argument was that the police officers acted within their capacity as police officers. They followed the law as it was stated to them. However rightly or wrongly it could be interpreted they followed the law. And specifically it provided for a procedure by which a child left alone should be placed. And again I agree with your honor. I do not believe it did create a liberty interest in the plaintiff. The grandparents, both Angela and Jack Houser, Jack being the step-grandparent, were available to take the child. They were concerned. There was a concern for the safety of this child. Counsel they arranged ahead of time. There was evidence that they had a private detective and that they met with the police and that the child in advance was going to be placed with them. That they sought this arrest for the purpose of taking the child from the mother is what evidence showed at trial. And whether or not we would reweigh that evidence differently we have to look at it in the light most favorable to the plaintiff. That is correct your honor. And again with regards to that the parties must act in conjunction with a state actor in order to come within the realm of section 1983. Again they were concerned for the safety of this minor child. That doesn't matter. They may have had a motive for wanting to take her. And frankly some of the evidence that you wanted to exclude I think helps the plaintiff's case insofar as it showed why the grandparents wanted to get the child out of the house. But even a grandparent who has a motive to want to get the child out of the house can't conspire with the police to get the child out. I get it. But the conspiracy must be both ways. And with regards to that conspiracy it is clear from the record that there was no agreement between the state actors and my clients to remove the child from the house. There was an agreement to effectuate an arrest and to follow the law as they saw the law existed at that time. And again I keep citing the 725 ILCS 5-1072 which provided the procedure. Now there was evidence of a number of meetings, phone calls, conversations between the sheriff, the chief of police, two officers that work for the chief of police, and the housers. And these meetings... Was there also testimony that some of the officers were reluctant to participate in the arrest? That one of the South were going to throw the state's attorney under the bus. The arrest was planned for a time when Greene's husband would be working. And isn't it rather unusual for the complainants to accompany police to the arrest? It is unusual. In order to prove a 1983 action there has to be, under color of law again, to commit an unlawful act. And there was no unlawful act that was committed, number one. And number two... What is your citation for it is not unlawful? I find that so odd. I don't particularly understand that question. Well let me... Go ahead Judge Movener. I'm asking you why you say that it's lawful for a citizen who is complaining to accompany, to plan when it will happen, and to go, to be there for the arrest. And to pre-arrange in advance that they will take the child that they're trying to remove from the house. If the party being arrested consented. And I believe the evidence at trial showed that the party being arrested consented to the placement of the child with Jack Hauser. I didn't think the evidence showed that. That's not the question. The question is what were the Hausers doing at the arrest? Well they were there because, again they were there, and I think the record is clear, they were there for the purpose of ensuring the safety of the minor child. And a jury could look at that evidence and conclude that they were there because they had conspired with the police to take the child from the home. I don't believe based upon the evidence that was presented. This is a sufficiency of the evidence argument, correct? Yes, that is correct. And that is the argument that you're raising here. You're not raising any argument about a liberty interest, correct? No. So you've waived any argument to that effect. This is a sufficiency of the evidence. That's correct. Okay. And I believe that the jury came to their conclusion based upon the fact that they did not like what the Hausers did. And again, the sufficiency of the evidence must go to whether a her rights were violated pursuant to color of state state law, whether by unlawful means or lawful means to commit an unlawful act. The facts in here, I believe, are pretty simple. The interpretation of the law I find somewhat difficult, and I'm attempting to argue my position with regards to that. And I have about three minutes left. I would like to reserve some of it for rebuttal. Certainly. Thank you, Counsel. Mr Heller. Thank you, Your Honor. I mean, he's a court counsel. The court is absolutely right. This this is a case about illegal conduct and about a conspiracy to take the child away from the home. There can't be any real question, but there was substantial evidence before the jury. The trial court specifically recited it in ruling on not only the motion for directed verdict at the close of the plaintiff's case, but also at the end of the case and cited all of the evidence. Matter of fact, the trial judge said to counsel, Isn't it true that this evidence was before the jury and this evidence was before the jury? And counsel admitted that it was. But then he wants to come here and ignore that evidence. But you have evidence in this case, probably more so than any other case involving conspiracy, where the the defendants called the chief of police. They arranged for meetings at the courthouse after hours. They arranged for a private meeting after hours at the police chief's gun shop. They travel together to the police station. The police chief gets cold feet. He won't effectuate the arrest. Neither will his deputies. So they call the sheriff at home in bed, and he comes at two o'clock on Sunday morning to the police station, and he calls the state's attorney and the dispatcher puts in black and white. Per the sheriff, the state's attorney has said the child will be placed with the housers. It's in writing. So so the jury says, Yeah, there was an agreement to take this child illegally. Doesn't matter whether the arrest was appropriate. As the court pointed out, the children often accompany the parents. As a matter of fact, Jade Green testified that she had other people that were willing to come and take care of the child. But Jack and Angela wanted the child so they could run to another county, get an order of protection, deprive my client of her rights under the law. There was a question as to whether or not there's any illegal illegality of what's going on. Counsel keeps talking about the statute, and the judge specifically found that it requires the consent or cooperation with the parent. There was testimony that wasn't any of that either. But you can't take someone's child without due process. The state, the Illinois state troopers who testified said that he was considering filing kidnapping charges. But that's what they did. They kidnapped this child without due process. Counsel didn't argue now that the trial court erred somehow by excluding this evidence of their motive. The court mentioned it. But he could have been the direct descendant of the Boston Strangler, but he still has to follow the law in terms of taking custody of a child away from a parent. You can't just arrange to have the state's attorney, the sheriff, and the chief of police go out to the house in the works. That is an illegal act. And the jury found that it was illegal. And then they assess damages. Now there was there was no offer of proof in this case as to what this other evidence would have been that counsel wanted. So it's hard for us to know. But the other aspect I think that the trial court had to consider was we'd have ended up with a trial within a trial because then Mr. Green would have to show that while the grandparents believed that he was really an awful person, that he wasn't. And that wasn't the issue really before the court. He lived with grandma and grandpa and the child in their house with this order of protection for a long period of time. And the jury did hear that. And they were aware of that. But the long and short of it is there was all kinds of evidence in this case that these parties got together that they came up with an agreement included checking to see that Mr. Green was at work when they went, going to the house. It included having the housers follow them. It included a signal from the police to Jack to come into the house because he didn't come in initially. It included letting him into the house when he wasn't invited. It included taking the child. And all of that was predetermined prior to the time they did what they did, which was to take this child illegally. And based upon that the jury awarded damages. And just as the trial court said, there may not be complete agreement by this court with what those damages are, but they're reasonable. And there's nothing in argument today that suggests that the awards were inappropriate. The suggestion in the brief that the attorney's fees were higher than they should have been, there was no objection to the attorney's fee bill which was presented to the jury. It came into evidence without objection. And as a matter of fact, the jury even looked at it closely enough that they reduced the amount by the amount that was recovered in fees for the settlement with the sheriff and the state's attorney. So there really is nothing that says this award was anything other than a reasoned decision by the jury based upon this evidence they heard. They heard evidence that people were taking the law into their own hands, that they were doing it to get the custody of this illegal act. And as a result of that, the jury returned a verdict in favor of them. The trial court very carefully considered that. It ruled on this at least four times in terms of the summary judgment, the motion for directed verdict, the motion for directed verdict, the close of all the evidence, and the motion to reconsider. All of those times the court set forth these elements of evidence which were before the jury and found that a reasonable jury could reach those results. I believe that based upon that, this court should affirm the trial court's decision. Thank you. Thank you, counsel. Briefly, Your Honor, with regards to the damages, we briefed that issue in our brief. We believe that the damages were excessive based upon a number of issues. And issue number one was, is after the child was taken that evening, it is clear that the Housers went to Saline County. They swore out an order of protection. That order of protection was granted. They used the process that is set forth in the state of Illinois to do what they did. But it is also clear that Jade Green did not attempt to contact her minor child. There was evidence that she knew how to call her mother. She knew where the child was. She knew the child was with her mother and her stepfather. And when she was offered two weeks later to visit the child at any time she wished, as long as Mr. Green was not present, she declined to do so. It is also clear that a month and a half later, she received extensive visitation with her minor child. Now with regards to the motion in Lemonade that granted or prohibited the defendants from going into any evidence prior to September of 2014, there was evidence, and we cited it in our brief, of dirty house, violence between the parties, both Jade and Josh Green, and that goes directly towards damages. And that's why I'm bringing it up now. Also, orders of protections that were issued as against Mr. Josh Green. Now that was explored during the trial, and it was explored during the trial because plaintiff had opened the door with regards to that. But it was not explored in context, and in context of to explain why the Housers did what they did that evening. And again, I believe that went directly towards damages, and we cited that the court said, well yeah, it may be with regards to damages, but I'm just not going to allow it. And so I think that was improper when the court ruled that way. And again, I do not believe that the evidence as set forth in this case was sufficient to prove a conspiracy. There was just no agreement between the parties to deprive Jade Green of her minor child. Thank you. Thank you, counsel. The case is taken under advisement.